UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

Filed & Entered
On Docket
July 23, 2015

_____

**In re:**

    **Douglas Richard Jones**                       Chapter 13 Case
    **and Sandy Lee Jones,**                        # 13-10734
                     **Debtors.**

_____

**Douglas Richard Jones**
**and Sandy Lee Jones,**                               Adversary Proceeding
                     **Plaintiffs,**                # 13-1019
       v.
**Nationstar Mortgage, LLC,**
                     **Defendant.**

_____

| *Appearances:* | *Rebecca A. Rice, Esq.* | *Grant C. Rees, Esq.* |
|---|---|---|
| | *Rutland, Vermont* | *Lobe, Fortin, and Rees, PLC* |
| | *For the Plaintiffs* | *South Burlington, Vermont* |
| | | *For the Defendant* |

**MEMORANDUM OF DECISION**
**GRANTING IN PART EACH OF THE CROSS MOTIONS FOR SUMMARY JUDGMENT**
**AND DETERMINING AMOUNT AND CLASSIFICATION OF THE DEFENDANT'S CLAIM**

        Douglas and Sandy Jones, as husband and wife, own real property in Sharon, Vermont, which they occupy as their homestead. That homestead property is subject to a mortgage held by Nationstar Mortgage, LLC. Mr. and Mrs. Jones commenced this proceeding to obtain a declaration that the Nationstar mortgage is unenforceable. The parties have stipulated the mortgage does not satisfy the statutory requirements of Vermont law. However, Nationstar asserts that, notwithstanding the legal defect in its mortgage, the equities weigh in its favor and the mortgage should be declared valid on equitable grounds. Each party has filed a motion for summary judgment asserting there are no material facts in dispute and they are entitled to judgment, based upon the controlling law and applicable equitable principles.

For the reasons set forth below, the Court finds there are no material facts in dispute, summary judgment is proper and, based upon the equities presented, the record warrants entry of judgment that (i) subrogates Nationstar to the extent of the amount of the mortgage and property taxes Nationstar paid on behalf of Mr. and Mrs. Jones, (ii) allows that portion of Nationstar's claim as secured, (iii) grants Nationstar an equitable lien for a portion of its remaining claim, (iv) allows that portion of Nationstar's claim as secured, and (v) allows the balance of Nationstar's claim as a general unsecured claim.

## JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered in this District on June 22, 2012. The Court declares the claims presented by these cross motions for summary judgment are core matters under 28 U.S.C. §§ 157(b)(2)(B) and (K), over which this Court has constitutional authority to enter a final judgment.

## PROCEDURAL HISTORY

On October 21, 2013, Douglas and Sandy Jones (the "Plaintiffs") filed a petition for relief under Chapter 13 of the Bankruptcy Code (doc. # 1 in main case # 13-10734). The Plaintiffs commenced this adversary proceeding with the filing of a complaint on December 9, 2013 (the "Complaint") (doc. # 1 in adversary proceeding # 13-1019)[1] challenging the validity of the mortgage held by Nationstar Mortgage, LLC (the "Defendant"). On January 7, 2014, the Defendant filed an answer to the Complaint (the "Answer"). On November 14, 2014, the parties each filed a motion for summary judgment (doc. # 21, the "Defendant's MSJ" and doc. # 22, the "Plaintiffs' MSJ"), as well as a joint statement of undisputed material facts (doc. # 21-2, the "SUMF"). The Plaintiffs filed an objection to Defendant's MSJ on December 5, 2014 (doc. # 23) (the "Plaintiffs' Objection").[2]

Thereafter, pursuant to the Court's directive to file supplemental memoranda to clarify the parties' positions on the applicability of the state and federal equitable doctrines of unjust enrichment, the Defendant filed a supplement to its MSJ (doc. # 26), the Plaintiffs filed a response to that supplement (doc. # 28) and the Defendant filed a reply (doc. # 29). The cross motions for summary judgment are fully submitted.

## ISSUES PRESENTED

The cross motions for summary judgment raise two issues. The first issue is whether the facts and circumstances warrant granting the Defendant relief based upon the doctrine of equitable subrogation, and

---

[1] All citations to the docket refer to the instant adversary proceeding (# 13-1019) unless otherwise indicated.
[2] The Defendant did not file an opposition to the Plaintiffs' MSJ. Vermont Local Bankruptcy Rule 7056-1(a)(2) requires a party opposing summary judgment to file a written opposition no more than 21 days after the motion is served. However, in light of the Defendant's contemporaneously filed MSJ, and the parties' stipulation concerning cross motions for summary judgment filed October 8, 2014 (doc. # 17), the Court treats the Defendant's MSJ as written opposition to the Plaintiffs' MSJ, sufficient to satisfy Vt. LBR 7056-1(a)(2) .

2

if so, the amount of the Defendant's subrogated claim. The second issue is whether the pertinent facts and circumstances weigh in favor of granting the Defendant additional relief based upon the equitable doctrine of unjust enrichment. Resolution of these issues will enable the Court to classify and fix the amount of the Defendant's allowed claim in the Plaintiffs' bankruptcy case.

## UNDISPUTED MATERIAL FACTS

The parties have stipulated to the following facts, which the Court finds to be material and undisputed:

1. Debtor, Douglas Jones, in his sole name, acquired real property located at 3600 Faybrook Road in Sharon, Vermont (hereafter the "Property") by quitclaim deed from Everett Jones, Jr. and Scott Jones that was dated February 13, 1996, and properly recorded on February 22, 1996. (¶ 1, SUMF)

2. Judy Jones, Douglas Jones' former spouse, executed a quitclaim deed to the Property in favor of Douglas Jones that was dated February 27, 1998, and properly recorded on March 19, 1998. (¶ 2, SUMF)

3. Douglas Jones and Sandy Jones were married on July 21, 1999. (¶ 3, SUMF)

4. Since 1999, the Plaintiffs have occupied the Property as their principal dwelling place and homestead. (¶¶ 4-5, SUMF)

5. On April 16, 2007, as part of a refinance, Douglas Jones executed a promissory note in the original principal amount of $149,607.50 in favor of the Defendant (the "Promissory Note"). (¶ 9, SUMF)

6. On April 16, 2007, Douglas Jones executed a mortgage deed in favor of the Defendant to secure the Promissory Note (the "Mortgage"). (¶ 10, SUMF)

7. At closing the proceeds of the refinance were distributed as follows:

    a. $74,788.31 was used to satisfy a first mortgage interest in the Property in favor of Select Portfolio Servicing ("SPS");

    b. $2,769.95 was used to pay all delinquent property taxes owed to the Town of Sharon;

    c. $18,343.00 was used to satisfy a VW Credit secured debt, incurred to purchase (and secured by) a John Deere tractor;

    d. $9,711.00 was used to satisfy a Citifinancial secured debt, incurred to purchase (and secured by) a 2004 Ford Explorer;

    e. $14,825.00 was used to satisfy a Green Tree Servicing secured debt, incurred to purchase (and secured by) a mobile home;

    f. $14,762.67 was used to satisfy various unsecured debts, including credit card obligations; and

    g. the balance of $14,407.57 was retained by the Plaintiffs. (¶ 13, SUMF)

8. When Douglas Jones applied for the instant mortgage loan, he indicated on the application both that he would hold title to the Property as "single" and that he was currently married. (¶ 18, SUMF)

9. That loan application also indicated the purpose of the loan was to refinance the debt encumbering his primary residence. (¶ 19, SUMF)

10. Sandy Jones did not execute the Promissory Note or the Mortgage. (¶¶ 11-12, SUMF)

11. The Property was appraised by a residential appraiser as having a value as of February 25, 2014, of $146,000. (¶ 6, SUMF)

12. The Defendant filed an amended proof of claim on March 19, 2015 (claim # 13 in the main case) asserting a secured claim in the amount of $153,359.70.

## DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the record shows no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56; Fed.R.Bankr.P. 7056; see also Bronx Household of Faith v. Bd. of Educ. of the City of New York, 492 F.3d 89, 96 (2d Cir. 2007). The moving party bears the burden of showing there is no genuine issue of material fact. See Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). A genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). In making its determination, the court's sole function is to determine whether there is any material dispute of fact that requires a trial. Anderson, 477 U.S. at 249; see also Palmieri v. Lynch, 392 F.3d 73, 82 (2d Cir. 2004). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving party. See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 579 (2d Cir. 2006).

### B. VERMONT HOMESTEAD LAW

Vermont exemption law defines the homestead exemption as follows:

> [t]he homestead of a natural person consisting of a dwelling house, outbuildings and the land used in connection therewith, not exceeding $125,000.00 in value, and owned and used or kept by such person as a homestead together with the rents, issues, profits, and products thereof, shall be exempt from attachment and execution except as hereinafter provided.

27 V.S.A. § 101; see In re Mead, 489 B.R. 363, 368 (Bankr. D. Vt. 2013). The purpose of Vermont's homestead exemption is to preserve a home for the family, to protect the family as a unit whether it consists of a husband and wife or any other natural person. In re Mead, 489 B.R. at 369. To further that purpose, Vermont law also provides:

4

> [a] homestead or an interest therein shall not be conveyed by the owner thereof, if married, except by way of mortgage for the purchase money thereof given at the time of such purchase, unless the wife or husband joins in the execution and acknowledgement of such conveyance. A conveyance thereof, or of an interest therein, not so made and acknowledged, shall be inoperative so far only as relates to the homestead provided for in this chapter.

27 V.S.A. § 141. Liens created without the non-signing spouse's consent are voidable; the non-signing spouse may elect to set such a mortgage aside. See GMAC Mortg., LLC v. Orcutt, 506 B.R. 52, 65 (D. Vt. 2014). This is precisely the scenario here: the subject mortgage encumbers a homestead property owned by a married couple; only one spouse, Douglas Jones, signed the mortgage in favor of the Defendant; the other spouse/co-owner did not join in the conveyance of the mortgage; and that non-signing spouse has elected to seek to set aside the Defendant's mortgage and have it declared inoperative.

The Defendant does not contest both spouses' signatures were required on the mortgage, or that since only one spouse signed it, the mortgage is voidable pursuant to 27 V.S.A. § 141, and the non-signing spouse has invoked her rights under that statute.[3] Rather, the Defendant argues that its mortgage is valid and enforceable against both Plaintiffs in the context of the equities of the instant transaction by application of the principles of equitable subrogation and unjust enrichment.

### C. Relief under the State Law Doctrine of Equitable Subrogation

Under applicable state law, the Defendant has no operable lien securing its interest, and therefore the Defendant's claim may not be treated as a secured claim in this bankruptcy case unless, as discussed below, application of equitable principles changes that outcome. The Defendant's first argument as to why its mortgage should be treated as valid, notwithstanding the applicability of 27 V.S.A. § 141, relies principally on the Vermont District Court's recent decision in GMAC Mortg., LLC v. Orcutt, 506 B.R. 52 (D. Vt. 2014), in which the District Court addressed facts and arguments generally similar to those the parties assert here. The Defendant argues that Orcutt requires this Court to apply the state law doctrine of equitable subrogation.[4] The Defendant concludes this necessarily leads to allowance of the Defendant's claim as a secured claim in the amount of $120,437.26.[5] The Plaintiffs, in response, argue that the circumstances of this transaction do not satisfy the requirements for invoking equitable subrogation and, in any event, neither the equities nor general notions of fairness weigh in favor of granting that relief to the Defendant.

---

[3] The Defendant's MSJ is silent on this issue, which the Court interprets as the Defendant's acknowledgement of the ordinary operation of 27 V.S.A. § 141. Alternatively, the Court finds the Defendant has waived any argument on this issue.
[4] Although the Defendant invokes language from the Orcutt decision pertaining to this Court's broad equitable powers, see Defendant's MSJ, p. 6, the Defendant's requests for relief are limited to the state law doctrines of equitable subrogation, discussed here, and unjust enrichment, discussed separately below.
[5] In contrast to its proof of claim, in this adversary proceeding the Defendant seeks to designate less than all of its claim as secured.

*i. THE DEFENDANT SEEKS EQUITABLE SUBROGATION FOR LESS THAN ALL OF ITS CLAIM*

Before analyzing if and how the doctrine of equitable subrogation applies in this case, it is important to clarify the scope of relief the Defendant seeks. The Defendant advanced the sum of $149,607.50 to the Plaintiffs (¶ 9, SUMF), and filed a proof of claim in this case in the amount of $153,359.70. However, the Defendant does not seek a determination that its entire claim should be secured. Rather, the Defendant asks that by application of the doctrine of equitable subrogation, $120,437.26 of its claim be secured by a mortgage on the Plaintiffs' real property, computed as the sum of the following loan proceeds disbursements:

(1) $74,788.31 used to satisfy a first mortgage interest in the Property in favor of SPS;
(2) $2,769.95 used to pay all delinquent property taxes owed to the Town of Sharon;
(3) $18,343.00 used to satisfy the VW Credit secured debt, secured by a John Deere tractor;
(4) $9,711.00 used to satisfy a Citifinancial secured debt, secured by a 2004 Ford Explorer; and
(5) $14,825.00 used to satisfy a Green Tree Servicing secured debt, secured by a mobile home.

The Defendant specifically does not seek secured status for its claim with respect to the $14,407.57 retained by the Plaintiffs, the $14,762.67 used to satisfy unsecured obligations, or additional amounts due in connection with its alleged secured claim. In its MSJ, the Defendant acknowledges $32,922.70 of its claim is a general unsecured claim.

Subrogation is a doctrine which revolves around the "substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the [party whose debt was paid]" Black's Law Dictionary (10th ed. 2014). Therefore, it is important to distinguish the different entities to whose rights the Defendant seeks to subrogate. For purposes of the instant case, the Court separates those entities into two groups: those whose debts were secured by the Plaintiffs' Property,[6] and those whose debts were not.[7] The Court will address each in turn.

*ii. THE DEFENDANT HAS SATISFIED THE 4-PRONG TEST FOR EQUITABLE SUBROGATION AS TO TWO LIENS*

Equitable subrogation may be used to remedy a situation in which, as a result of a mistake, a party stands to suffer unfair consequences. The District Court in Orcutt articulated four criteria a party must satisfy to demonstrate a right to the benefits of equitable subrogation under Vermont law:

> (1) the subrogee cannot have acted as a volunteer; (2) the subrogee must have paid a debt upon which it was not primarily liable; (3) the subrogee must have paid the entire debt; and (4) subrogation may not work any injustice to the rights of others.

GMAC Mortg., LLC v. Orcutt, 506 B.R. at 71 (citing E. Boston Sav. Bank v. Ogan, 701 N.E.2d 331, 334 (Mass. 1998)).

---

[6] This group is comprised of the $74,788.31 first mortgage debt to SPS and the $2,769.95 debt owed to the Town of Sharon, both secured by the Plaintiffs' Property.

[7] This group is comprised of the $18,343.00 VW Credit secured debt, secured by a John Deere tractor, the $9,711.00 Citifinancial secured debt, secured by a 2004 Ford Explorer, and the $14,825.00 Green Tree Servicing secured debt, secured by a mobile home.

The Plaintiffs first assert the Defendant acted as a volunteer, and thus cannot demonstrate a right to equitable subrogation. The Plaintiffs posit the instant facts must be distinguished from Orcutt because here, the Defendant satisfied a mortgage (and other liens) held by other lenders whereas in Orcutt, the lender had satisfied its own prior mortgage. That argument is unavailing. As the Orcutt court stated,

> Under Vermont law, GMAC is not a "volunteer" who is precluded from raising an equitable subrogation defense. … This payment protected GMAC's "interest in the homestead as collateral to secure the debt" and is sufficient to establish that the transaction was not voluntary. See Chase, 921 A.2d at 377 (determining that Ameriquest (second lender) was not a voluntary payer when it paid off a mortgage held by Bankers Trust (first lender) "in order to protect its interest in the homestead as collateral to secure the debt"); Rock River Lumber Corp., 262 N.W.2d at 115, 117–20 (concluding second lender who "advanced money to discharge the existing mortgage of" the first lender became "subrogated to the rights of the [first lender] and, therefore, to priority as against construction lien claimants who would otherwise have been entitled to priority as against the [second lender's] mortgage"); see also Mort v. United States, 86 F.3d 890, 894 (9th Cir.1996) ("A person who lends money to pay off an encumbrance on property and secures the loan with a deed of trust on that property is not a volunteer for purposes of equitable subrogation."); Katsivalis v. Serrano Reconveyance Co., 70 Cal.App.3d 200, 138 Cal.Rptr. 620, 625–28 (1977) (concluding lender who granted new mortgage was not a volunteer and was entitled to equitable subrogation, despite that new mortgage's invalidity under California law).

Id. at 69. The court in Orcutt relied on multiple cases involving lenders who satisfied mortgages of other lenders and were still held not to be volunteers. Therefore, the Court concludes the Defendant is not a volunteer for purposes of eligibility for equitable subrogation, under the standard articulated in Orcutt.

Even if this Court were to distinguish this case from Orcutt and conclude the Defendant acted as a volunteer, the Court is no longer persuaded that the Vermont Supreme Court would find the Defendant's potential volunteer status an impediment to the application of equitable subrogation, based upon the guidance from Restatement (Third) of Restitution and Unjust Enrichment. Although the Vermont Supreme Court has recognized the doctrine of equitable subrogation, see Nationwide Mut. Fire Ins. Co. v. Gamelin, 173 Vt. 45, 786 A.2d 1078, 1084 (2001), it has never articulated a specific test, and has broadly observed "[equitable subrogation] enables a secondarily liable party who has been compelled to pay a debt to be made whole by collecting that debt from the primarily liable party, who, in good conscience, should be required to pay."[8] Id. Additionally, the Vermont Supreme Court has repeatedly adopted the position espoused by Restatement (Third) of Restitution and Unjust Enrichment where Vermont law is underdeveloped or vague. See Birchwood Land Co. v. Krizan, 2015 VT 37, ¶ 9 (2015); JW, LLC v. Ayer, 2014 VT 71, ¶ 22 (2014). The Restatement abandons the "volunteer" test for the application of equitable subrogation, generally, as well as in the specific context of mortgages. See Restatement (Third) of

---

[8] The four part test set forth in Orcutt is the product of widely accepted law from other jurisdictions.

Restitution and Unjust Enrichment § 24 cmt. d (2011) ("[T]he old-fashioned rule barring subrogation to a 'volunteer' is rejected in the mortgage context for the same reasons it is rejected here"); Restatement (Third) of Property: Mtges § 7.6 ("This Restatement does not adopt the 'volunteer' rule, but instead requires simply that the subrogee pay to protect some interest."). In light of the position espoused by the Restatement, and the Vermont Supreme Court's current broad definition of equitable subrogation, the Court is persuaded the Vermont Supreme Court, on these facts, would not preclude the Defendant from reaping the benefits of equitable subrogation, even if it found the Defendant were a volunteer in the subject loan transaction.

Based on this review of state and federal law in Vermont, as well as the guidance from the Restatement, the Court concludes the Defendant is not ineligible for equitable subrogation based upon the first prong of the applicable test.

The undisputed material facts also demonstrate the Defendant has satisfied the second and third prongs of this test. The Plaintiffs do not dispute the Defendant was not primarily liable on any of the debts paid from the loan proceeds or that each of those debts was paid in full.

This brings the Court's focus to the fourth prong: whether the subrogation would work an injustice on other parties. In the instant case, there are no subordinate or intervening lien holders who would be harmed by applying subrogation. The Court thus turns its attention to the impact subrogation would have on the Plaintiffs' unsecured creditors. "Equitable subrogation ... is not simply based on whether a lender paid another's debt. It contemplates a balancing of the equities between competing claimants." In re Orcutt, 506 B.R. at 72 (citing In re Couillard, 486 B.R. 466, 478 (Bankr. W.D. Wis. 2012). That impact is difficult to assess here. The Plaintiffs' confirmed Chapter 13 plan proposes payments of $400 per month for 60 months, and a total dividend to general unsecured creditors of $5,808.77, or 3.4%. But, the plan treats the Defendant's claim as wholly unsecured. If the Defendant's claim is instead allowed as partially secured, then, without any other changes to the plan, the total amount of unsecured claims will decrease and generate a corresponding increase in the dividend to this class of claimants. However, the Plaintiffs' obligation to secured creditors would increase, and thus have the likely impact of decreasing the dividend to unsecured creditors.[9] In light of the uncertainty of this impact, and the lack of record to more thoroughly assess it, this factor is deemed to be neutral, not weighing in either party's favor.

---

[9] The plan confirmed February 13, 2014 treats the Defendant's claim as fully unsecured and does not provide for any payment to the Defendant on account of a secured claim. Consistent with that approach, the Plaintiffs have not included any mortgage expense on Schedule I (most recently amended on December 13, 2013). The confirmed plan proposes payments of $400 per month for 60 months, for a total distribution to holders of unsecured claims in the amount of approximately $5,800, amounting to a 3.4% dividend on unsecured claims. Of the $171,000 in unsecured claims, approximately $154,000 is the Defendant's claim (leaving only about $17,000 in other general unsecured claims). If, contrary to the Plaintiffs' plan, the Defendant's claim were allowed as secured in the amount the Defendant seeks, the pool of general unsecured claims would diminish to $50,000. If plan payments nonetheless remained at $400 per month, this would increase the dividend from 3.4% to approximately 11%.

Finally, the Court must also consider the potential injustice subrogation would work on the Plaintiffs. The Plaintiffs argue the Defendant was negligent in failing to obtain Mrs. Jones' signature, the Defendant could easily have avoided making this "error," and its own negligence is the sole cause of the Defendant's present predicament. This aspect of the Plaintiffs' argument is not persuasive because negligence alone is not sufficient to defeat equitable subrogation.[10] Negligence is only one of several factors the Court must weigh in discerning where the line is between fairness and unjust enrichment. "Ordinary negligence may be taken into consideration in determining whether the negligent party is entitled to subrogation, but ordinary negligence alone is not a complete bar to subrogation where, in spite of such negligence, the equities are still in favor of the subrogee," and courts have permitted equitable subrogation even in the face of lenders' negligence. 73 Am. Jur. 2d Subrogation § 17; see Orcutt, 506 B.R. at 72; Chase v. Ameriquest Mortg. Co., 155 N.H. 19, 28 (2007); Brooks v. Resolution Trust Corp., 599 So. 2d 1163, 1165 (Ala. 1992). Here, if the Defendant were subrogated to the prior mortgage and the tax lien, there would be no injustice or harm to the Plaintiffs. Permitting the Defendant to subrogate to the rights of the parties who previously held those debts merely restores the Plaintiffs to the position they were in prior to their transaction with the Defendant. It does not impair the Plaintiffs' interest in their homestead any more than it was impaired on the date the Plaintiffs borrowed funds from the Defendant. See Chase v. Ameriquest Mortg. Co., 155 N.H. at 28; see also Palm Beach Sav. & Loan Ass'n v. Fishbein, 619 So. 2d 267, 270-71(Fla. 1993) (imposing equitable lien only to the extent that borrower was "in no worse position than she stood before the execution of the mortgage").

The Court finds the Defendant has satisfied all four prongs of the equitable subrogation test with respect to its request to subrogate up to the amount of the mortgage lien and property tax lien as of the date of its loan transaction with the Plaintiffs, and on that basis is entitled to an allowed secured claim of $77,558.25, secured by the Plaintiffs' Property.

---

However, the amount of the monthly plan payment is dependent upon the amount of the Plaintiffs' monthly net income, and if the Defendant's claim were allowed as secured, then the Plaintiffs would need to include a mortgage payment in their regular monthly expenses, causing a dollar for dollar reduction in their monthly net income. The parties have not addressed this question or provided a computation of the financial impact subrogation would have on the treatment of unsecured creditors in this case. Assuming arguendo that the monthly mortgage payment to the Defendant would be roughly equivalent to the monthly payment due under the note of the prior mortgagor, this would add a monthly expense of approximately $1,250 and result in the Plaintiffs having negative net income of over $800. Presumably, this would place the Plaintiffs in a position where they would need to modify their mortgage substantially, surrender their home, or convert their case to a case under Chapter 7. In any of these events, the dividend to general unsecured creditors would be eliminated. Thus, for the class of general unsecured creditors, it appears denying subrogation may yield the best result for them, namely a 3.4% dividend.

[10] The Plaintiffs rely on an unpublished Vermont Superior Court case for the proposition that a lender's negligence is sufficient to prevent application of equitable subrogation. See Slaving v. Cendant Mortgage Corp., Superior Court of Vermont, Bennington, Docket Nos. 13-1-04, Bncv (2005). For the reasons set forth below, the Court finds the rationale of other cases more persuasive, and therefore chooses not to rely on the Slaving decision, particularly in light of the District Court's admonition in Orcutt (which post-dates Slaving) that a party's negligence alone cannot constitute the sole basis for denying equitable subrogation. See Orcutt, 506 B.R. at 72.

9

### *iii. THE DEFENDANT IS NOT ENTITLED TO EQUITABLE SUBROGATION AS TO THE BALANCE OF ITS CLAIM*

The Defendant has not, however, demonstrated a right to equitable subrogation in an amount in excess of the amount of the liens on the Property at the time of its transaction with the Plaintiffs. The secured claim the Defendant seeks against the Property is premised on its having disbursed proceeds in that amount for the satisfaction of secured debts at the loan closing. If this relief were granted, the Defendant would also be secured by the Plaintiffs' homestead for sums it loaned the Plaintiffs to satisfy the John Deere tractor secured debt in the amount of $18,343, the 2004 Ford Explorer secured debt in the amount of $9,711, and the mobile home secured debt, in the amount of $14,825, resulting in the Defendant having a greater security interest in the homestead property than existed at the time of the subject loan transaction. This exceeds the scope of equitable subrogation relief available.

> Subrogation reverses this form of [unjust] enrichment by authorizing the claimant to assert the prior rights of the third-party obligee or lienor vis-à-vis the defendant and the defendant's property, <u>as those rights existed before the claimant's assets were applied</u>.

Restatement (Third) of Restitution and Unjust Enrichment § 57 (2011) (emphasis added). The Defendant can exercise only the rights the subrogor possessed.

> The equitable doctrine of subrogation places the subrogee in the precise position of the one whose rights are subrogated; the rights to which the subrogee succeeds are the same as, <u>but no greater than</u>, those of the person for whom he is substituted—<u>he cannot acquire any claim, security, or remedy that the subrogor did not have.</u>

73 Am. Jur. 2d Subrogation § 60 (emphasis added); <u>see</u> <u>Chase v. Ameriquest Mortg. Co.</u>, 155 N.H. at 28. Here, of the debts the Defendant satisfied, only the first mortgage and the tax lien were secured by the Plaintiffs' Property. Each of the three remaining secured debts was secured by different (personal property) collateral.

Under equitable subrogation, the Defendant may only step into the shoes of the previous mortgagee and the taxing authority, and its allowed secured claim is secured by a lien on the real property in the amount of $77,558.26 – the exact amount of the liens against this real property on the date of the loan transaction. As to the three remaining debts that were secured on the date of the loan transaction and paid from the loan proceeds, the Defendant can only enforce the rights the three subrogors possessed. Since none of those subrogors had the right to any recourse against the Plaintiffs' real property, application of equitable subrogation cannot give that right to the Defendant.[11]

"The amount recoverable by operation of equitable subrogation is limited by the 'general rule ... that a subrogee is entitled to indemnity to the extent only of the money actually paid by him to discharge <u>the

---

[11] With respect to collateral other than the real property, there is no dispute the 2004 Ford Explorer was destroyed in an accident, but the record contains insufficient information for the Court to determine the status of the collateral securing the other two debts (neither the tractor nor the mobile home described in the parties' papers are listed on the Plaintiffs' bankruptcy schedules).

10

obligation, or the value of the property applied for that purpose.'" Chase v. Ameriquest Mortg. Co., 155 N.H. at 28 (emphasis added) (citing 73 Am.Jur.2d Subrogation § 67). Accordingly, the Defendant is not entitled to a secured claim secured by the Plaintiffs' Property as to amounts in excess of $77,558.26, under the doctrine of equitable subrogation.

### D. RELIEF UNDER THE STATE LAW DOCTRINE OF UNJUST ENRICHMENT

Although most vigorously pursuing relief under the doctrine of equitable subrogation, the Defendant also seeks relief under the broader doctrine of unjust enrichment. Having granted the Defendant's request for a lien secured by the Plaintiffs' real property, under equitable subrogation, in the amount of $77,558.26, the Court now considers the Defendant's request that its remaining claim of $42,879 be allowed as a secured claim, under the equitable principle of unjust enrichment. In assessing the Defendant's rights in this regard, the Court considers guidance from the Vermont courts, Restatement Third, and cases from other jurisdictions which address similar facts.

#### i. VERMONT LAW ON THE ISSUE OF EQUITABLE LIENS

The Defendant argues it is entitled to a secured claim under the "broader category" of unjust enrichment under the facts of this case, in reliance upon Kellogg v. Shushereba, 2013 VT 76, and Lasek v. Vermont Vapor, Inc., 2014 VT 33. Both of these Vermont cases discuss unjust enrichment generally, but address the rights of a party seeking a money judgment – without any reference to the movant's right to a lien on real property. The Defendant does not explain how application of the principles of unjust enrichment warrants a declaration that the sums it loaned to the Plaintiffs, other than for satisfaction of liens against the Property, ought to be deemed secured by that collateral. The Court construes the Defendant's argument as one seeking an equitable lien on the Plaintiffs' Property for the balance of the debt not eligible for secured status under equitable subrogation, in the amount of approximately $43,000, and is asserting such an equitable lien is available under the general principle of unjust enrichment.

The Vermont Supreme Court has not determined whether an equitable lien may be imposed in circumstances similar to the case at bar. The Vermont Supreme Court has issued a number of decisions addressing the right to an equitable lien on homestead properties, but those cases are generally inapposite, either because they involve different facts or a different legal rationale than those at issue here.[12] See, e.g., Tindale v. Bove, 97 Vt. 465, 467 (1924) (holding lender had good equitable mortgage of indeterminate priority vis-a-vis junior lienholder where mortgage was not properly witnessed and there was evidence of fraud by borrowers); Wood v. Hubbard, 50 Vt. 82, 86 (1877) (party who paid funds pursuant to court order to protect equitable interest in real property was entitled to an equitable lien). The Vermont Supreme Court

---

[12] The Plaintiffs filed a copy of a very recent Vermont Supreme Court case, Birchwood Land Co. v. Krizan, 2015 VT 37 (2015) with their filings, which they assert is pertinent to the issues presented in the case at bar (doc. ## 23-1, 28-1). The Court has considered that decision and finds it to be inapplicable to the instant dispute.

11

decision most analogous to the instant case is Ripton v. McQuivey's Adm'r, 61 Vt. 76 (1889). In Ripton, a debtor conveyed his real estate to a husband and wife upon the condition that they pay his debts to a third party creditor. The husband executed a promissory note to the creditor for the amount of the debt. The promissory note was secured by mortgage on a portion of the property. The wife did not sign the mortgage. Thereafter, the husband died, his administrator refused to pay the debt, and his wife claimed the land free of any lien in favor of the creditor. The Vermont Supreme Court held that a court of equity would not declare the note to be a lien on the mortgaged premises as against the wife and denied the estate's request for an equitable lien.

Significantly, in refusing to permit the creditor in Ripton an equitable lien, the Vermont Supreme Court stated "[i]f the orator was ignorant of the rights of the [husband and wife], it arose from its neglect in not examining the land records in its own office." Id. at 76; see Townshend v. Howard's Estate, 94 Vt. 215, 217 (1920) ("Where a party has acted through mistake of fact, courts of equity will never afford relief where actual knowledge could have been obtained by the exercise of due diligence and inquiry"). Ripton is distinguishable from the case at bar because it involved a husband and wife who agreed to acquire real property subject to the previous owner's debt to a third party, not a debt of their own. Additionally, both the law and the practical reality of mortgage lending transactions have changed considerably in the 140 years since the Vermont Supreme Court decided Ripton. This Court is not persuaded Ripton definitively resolves the question of whether the Vermont Supreme Court, on the facts at bar, would grant the Defendant an equitable lien on the Plaintiffs' homestead property. Moreover, the United States District Court has indicated, in addressing the closely related topic of equitable subrogation, that, in the context of a bankruptcy proceeding, it is overly simplistic to deny equitable relief based solely on one party's mistake of fact. Orcutt, 506 B.R. at 72.

*ii. PERTINENT GUIDANCE FROM RESTATEMENT THIRD ON THE ISSUE OF EQUITABLE LIENS*

In the absence of a definitive statement by the Vermont Supreme Court, this Court once again turns to the Restatement. "One of the most characteristic uses of equitable lien is to readjust transactions that have miscarried – because of mistake, inattention, or wrongful interference – depriving the claimant of an intended element of security." Restatement (Third) of Restitution and Unjust Enrichment § 56 (2011). "Employed in this way, an equitable lien takes the place of the consensual lien that the claimant would have obtained if the transaction had gone as originally planned." Id. However,

> [a]ny such use of the equitable lien is potentially in conflict with the formal arrangements by which consensual liens are normally created and perfected. <u>Before a court will impose an equitable lien to rescue a claimant who has failed to take appropriate steps to obtain security, it must be satisfied that the remedy will not undermine the relevant statutory scheme.</u> The use of an equitable lien to replace a failed consensual lien closely resembles the use of subrogation to rescue refinancing

12

> lenders who have failed to take account of prior liens, <u>and it is predictably controversial for the same reasons.</u>

<u>Id.</u> (emphasis added). The Restatement gives no clear answer to the question presented, but clearly recognizes the delicacy of balancing one party's right to relief under general notions of equity or fairness against the broader need to preserve the import of a statue, encouraging careful scrutiny and a nuanced analysis.

### *iii. LAW OF OTHER JURISDICTIONS ON THE ISSUE OF EQUITABLE LIENS*

Courts in other jurisdictions have considered scenarios similar to the instant one, and they vary considerably in both their methodologies and results. They are divided roughly evenly on whether the facts at bar warrant imposition of an equitable lien. For example, in South Carolina, "[f]or an equitable lien to arise, there must be a debt, specific property to which the debt attaches, and an expressed or implied intent that the property serve as security for payment of the debt." <u>Chase Home Fin., LLC v. Risher</u>, 405 S.C. 202, 209 (S.C. Ct. App. 2013); <u>see</u>, <u>accord</u>, <u>US Bank Natl. Assn. v. Lieberman</u>, 98 A.D.3d 422, 424 (N.Y. App. Div. 1st Dep't 2012) (articulating similar standard and reaching similar holding). In <u>Risher</u>, a husband and wife entered into a contract to purchase a home and obtained a loan to finance the purchase. The wife did not sign either the mortgage or the note. Subsequently, the husband died, payments on the loan ceased, and the mortgage went into default. The lender sought an equitable lien against the wife's interest in the property. The court held the lender had failed to establish an express or implied intent for the wife's interest to serve as security for payment of the debt, even though the wife admitted she and her husband could not have afforded to purchase the property without the loan, she was present at the closing and aware of the loan, and she actually benefited from the loan. The court refused to impose an equitable lien. Yet, an Ohio court, applying an essentially identical standard to similar facts, concluded the lender was entitled to an equitable lien. See <u>JPMorgan Chase Bank, N.A. v. Jackson</u>, 2014-Ohio-320, ¶ 19 (Ohio Ct. App.). There, the court determined that since all the parties understood and intended the lender would provide purchase money and have a first lien on the property, the non-signing spouse was aware the property would be subject to a mortgage, and the funds were used to satisfy a first mortgage, an equitable lien was appropriate. Similarly, a bankruptcy court in Kansas imposed an equitable mortgage in favor of a lender where the non-signing party (whose signature was ultimately found to be forged by an unknown party) was aware of the transaction and would have signed the documents if she had been asked. See <u>Cox v. Countrywide Home Loans, Inc. (In re Cox)</u>, 408 B.R. 407, 414 (Bankr. D. Kan. 2009).

Other courts have permitted the imposition of an equitable lien, but only in circumstances based upon fraud or other malicious conduct on the part of a debtor, reasoning that to do otherwise would permit a debtor to transform the homestead exemption into "a sword to protect a theft." <u>Coppler & Mannick, P.C. v. Wakeland</u>, 138 N.M. 108, 112 (2005) (quoting <u>Webster v. Rodrick</u>, 64 Wn.2d 814, 394 P.2d 689, 691

(Wash. 1964)). Still other courts have focused on the promissory note, and reasoned that an equitable lien may not be imposed in the absence of a spouse's signature on the promissory note. See Ethridge v. TierOne Bank, 226 S.W.3d 127, 134 (Mo. 2007) (holding that since spouse did not sign promissory note, spouse did not owe obligation to lender, and first essential element for establishing equitable lien – duty or obligation owing from one party to another – was not present).

Some courts limit the relief available under the remedy of an equitable lien to the same extent as relief under equitable subrogation would be limited. See Fishbein, 619 So. 2d at 271; Katsivalis 70 Cal. App. 3d at 213; see also Matter of Stern v Hirsch, 2009 N.Y. Misc. LEXIS 5001 (N.Y. Sup. Ct. Oct. 22, 2009) (granting equitable subrogation and granting equitable lien only in same amount as equitable subrogation); In re Miller, 320 B.R. 203, 214 (Bankr. N.D. Ala. 2005) (holding unjust and inequitable result would occur unless lender had at least equitable lien to the extent funds borrowed from lender were used to satisfy prior first and second mortgages on property).

The final approach mirrors the predominant perspective of the Restatement and emphasizes the importance of staying true to the purpose of the underlying statute. For example, in Red River State Bank v. Reierson, 533 N.W.2d 683 (N.D. 1995), a husband and wife borrowed from a lender and granted the lender a mortgage in their homestead property. The lender failed to comply with a state statute which requires a homestead exemption waiver to be conspicuously printed on the mortgage conveying the homestead interest. See N.D.C.C. § 47-18-05.1(1). The trial court granted the lender's request for an equitable lien, but subordinated the lien to the borrowers' homestead rights and the rights of a prior mortgage holder; in effect, the lender received an equitable lien on only the unencumbered value of the property which was not subject to the borrowers' homestead rights. On appeal, the North Dakota Supreme Court affirmed the limited equitable lien granted to the lender. The appellate court found the lender had failed to comply with the relevant state homestead statute. Although the lender had made an effort to comply, and its failure was not the result of any deliberate effort to mislead the borrowers, the court found the purpose of the statute to be determinative and focused on the fact that the statute was unequivocally designed to benefit only borrowers. It concluded that if it granted the lender the greater equitable lien the lender sought, it would do so at the expense of the borrowers – the intended beneficiaries of the statute. The appellate court held any greater equitable lien would also render the statute meaningless because it would allow lenders to disobey the mandates of the statute without penalty, conjuring the same caution as the Restatement.

*iv. THE THREE PRIMARY CONSIDERATIONS FOR AN EQUITABLE LIEN ON HOMESTEAD PROPERTY*

The foregoing survey of pertinent jurisprudence persuades this Court there are three primary considerations which must guide the analysis of the Defendant's right to an equitable lien. First, how much

14

benefit, if any, has the non-signing spouse derived from the funds advanced by the Defendant? Second, how easily could the Defendant have avoided the mistake which gave rise to the request for an equitable lien? Third, to what extent would the granting of an equitable lien undermine the purpose of the underlying homestead statute with which the Defendant failed to comply?

With respect to the first consideration, the record is clear that Mrs. Jones derived a substantial benefit from the Defendant's advance of funds for the three loans which are the subject of the Defendant's equitable lien request. The $42,879 in question was used to satisfy liens on marital property, enhancing the value of those assets to both Plaintiffs. The Defendant asserts the denial of an equitable lien would result in dramatically unjustly enriching the Plaintiffs. Indeed, it is true that denying the Defendant's request for an equitable lien to secure this advance of funds, and relegating this portion of the Defendant's claim to the status of a general unsecured claim, would result in a substantial windfall for the Plaintiffs at the Defendant's expense.[13] Hence, the Court concludes this first consideration weighs in favor of granting the Defendant's request for an equitable lien.

As to the second consideration, the record is clear that, unlike some other equitable lien cases involving fraud or misconduct, the defect which led to the Defendant's precarious situation is a product of the Defendant's unilateral mistake – one which the Defendant could have avoided through the exercise of reasonable diligence. The Defendant, as a sophisticated commercial entity that engaged in residential lending in Vermont, had a duty to be aware of, and comply with, the requirements of the Vermont homestead statute. Additionally, the Defendant received a title commitment prior to advancing the funds which unambiguously required a proper mortgage from "Douglas R. Jones and spouse, if any, to [Defendant]." Doc. # 22-2 (emphasis added). The Defendant also had information conspicuously before it in the loan application that Mr. Jones was married. Moreover, all loan documents in the record are devoid of a signature line for Mrs. Jones and there is no evidence in the record that the Defendant made any attempt to procure Mrs. Jones' signature. See claim # 13-2 in main case 13-10734. Based upon these facts, the Court finds the Defendant had ample opportunity to comply with the pertinent statute, and failed to do so. The Court concludes this consideration therefore weighs against the granting of the Defendant's request for an equitable lien.

As to the third and final consideration, safeguarding the rights envisioned by the underlying statute, the Vermont Supreme Court has described the purpose of the Vermont homestead exemption, and homestead statutes in general, is "to protect homeownership from loss to creditors," and "conserv[e] family homes." Mercier v. Partlow, 149 Vt. 523, 524 (1988). The sole intended beneficiaries of this homestead

---

[13] This windfall would be particularly substantial with regard to Mr. Jones, as the record contains ample evidence that at least Mr. Jones and the Defendant bargained for, and intended, the Property to serve as collateral for the full amount of the loan from the Defendant.

statute are borrowers. Granting an equitable lien in this case would benefit only the Defendant, and would do so at the expense of the homeowners – the very parties who are the intended beneficiaries of the statute. Unlike the granting of relief to the Defendant under equitable subrogation, which has the practical effect of returning the Plaintiffs to the position they were in prior to this transaction, granting the Defendant an equitable lien in addition to the subrogated claim would expand the indebtedness against the homestead, reduce the scope of the Plaintiffs' homestead protection, and make the Plaintiffs' homestead property more vulnerable to creditors. Moreover, granting the Defendant an equitable lien against the Plaintiffs' homestead property would render the protection the state homestead statute is intended to grant effectively meaningless in this case. It would give the Defendant all the rights it ordinarily deserves only if it complies with the crucial statutory mandate, and make it more likely lenders will ignore the requirements of the statute in the future, anticipating equitable principles will excuse their non-compliance. This could substantially endanger and dilute the prohibition against unilateral spousal alienation of the marital homestead protections under the Vermont homestead statute, which the Vermont Legislature originally enacted in 1849, and the Vermont Supreme Court has vigilantly protected for over 140 years. See Brattleboro Sav. & Loan Ass'n v. Hardie, 2014 VT 26, ¶ 22, (2014); Abell v. Lothrop, 47 Vt. 375, 379-80 (1875). This consideration weighs against the granting of an equitable lien to the Defendant, and the Court gives this factor particular weight in light of the Restatement's emphasis on the important of this point, and the Vermont Supreme Court's frequent reliance on, and deference to, the positions articulated by the Restatement.

*v. TAILORING THE REMEDY TO THE CIRCUMSTANCES PRESENTED*

Under both federal and Vermont law, the Court has discretion to tailor an equitable remedy to the nature of the circumstances before it. See Cadle Co. v. Mangan (In re Flanagan), 503 F.3d 171, 179 (2d Cir. Conn. 2007); Richardson v. City of Rutland, 164 Vt. 422, 427 (1995).

> "The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims."

Electronic Specialty Co. v. International Controls Corp., 409 F.2d 937, 947 (2d Cir. N.Y. 1969) (quoting Hecht Co. v. Bowles, 321 U.S. 321, 329-330, 64 S. Ct. 587, 592 (1944)).

In light of the Court's analysis of the three considerations it deems most influential when considering whether to impose an equitable lien on homestead property, it finds it would be inequitable for the Court to grant the Defendant an equitable lien for the entirety of the sums it loaned to the Plaintiffs to satisfy debts secured by the Plaintiffs' personal property, since that relief would excuse the Defendant's negligence and significantly risk undermining the purpose of the homestead statute. It also finds it would

16

be inequitable to deny the Defendant its request for an equitable lien entirely, since that would ignore the real and substantial benefit the Plaintiffs enjoyed from the Defendant's loan of these monies. Since two of the three primary considerations described weigh in favor of the Plaintiffs and one weighs in favor of the Defendant, the Court determines it is fairest to fix the amount of the Defendant's equitable lien at one-third of the sum it seeks.

The Court recognizes the question of whether and how much of an equitable lien to grant is not one that lends itself to a mathematically precise computation. It is more an art than a science. After careful scrutiny of all relevant factors, the nuances of this particular case, and the pertinent authority and related case law, the Court concludes this one-third / two-thirds allocation of rights between the parties is fair. It penalizes the Defendant for its failure to exercise reasonable due diligence and comply with a vital Vermont statute, prevents the Plaintiffs from enjoying an unjust economic windfall, and solidifies the status of the Vermont homestead exemption.

The Court will impose an equitable lien in favor of the Defendant in an amount equaling one-third of the amount the Defendant seeks, or $14,293, and add this to the previously allowed sum, as a secured claim against the Plaintiffs' homestead property.

### CONCLUSION

For the reasons set forth above, the Court concludes there are no material facts in dispute, summary judgment is proper, and each of the parties is entitled to partial relief as a matter of law. The Defendant's claim in the amount of $153,359.70 is allowed as follows:

1. the Defendant is subrogated to the mortgage and property tax liens it satisfied at closing, for a secured claim in the amount of $77,558.26, secured by the Plaintiffs' homestead property;

2. the Defendant does not seek secured status for the funds the Plaintiffs retained in cash from the closing in the amount of $14,408, or for an additional $18,514.70 of its claim, so those amounts are allowed as general unsecured claims;

3. the Defendant is granted an equitable lien in the amount of $14,293, and that amount is allowed as a secured claim, secured by the Plaintiffs' homestead property; and

4. the balance of the Defendant's claim, $28,586, is disallowed as a secured claim and allowed as a general unsecured claim.

Accordingly, the Defendant's claim is allowed as a secured claim in the amount of $91,851.26, secured by the Plaintiffs' homestead property, and allowed as a general unsecured claim in the amount of $61,508.44.

This memorandum constitutes the Court's findings of fact and conclusions of law.

July 23, 2015  
Burlington, Vermont

_Colleen A. Brown_  
Colleen A. Brown  
United States Bankruptcy Judge

17